1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DARYL HICKS,                              No.  2:22-cv-0903 KJN P

12                 Plaintiff,

13          v.                                 ORDER

14   PATRICK COVELLO, et al.,

15                 Defendants.

16

17          Plaintiff is a state prisoner, proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C.

18   § 1983, and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This

19   proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20          Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

21   Accordingly, the request to proceed in forma pauperis is granted.

22          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

23   §§ 1914(a), 1915(b)(1).  By this order, plaintiff is assessed an initial partial filing fee in

24   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

25   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

26   forward it to the Clerk of the Court.  Thereafter, plaintiff is obligated to make monthly payments

27   of twenty percent of the preceding month's income credited to plaintiff's trust account.  These

28   payments will be forwarded by the appropriate agency to the Clerk of the Court each time the

1   amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

2   § 1915(b)(2).

3          As discussed below, plaintiff's complaint is dismissed with leave to amend.

4   <u>Screening Standards</u>

5          The court is required to screen complaints brought by prisoners seeking relief against a

6   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

7   court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally

8   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

9   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

10         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

11  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227-28 (9th

12  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

13  indisputably meritless legal theory or where the factual contentions are clearly baseless.  <u>Neitzke</u>,

14  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

15  pleaded, has an arguable legal and factual basis.  <u>See</u> <u>Jackson v. Arizona</u>, 885 F.2d 639, 640 (9th

16  Cir. 1989), <u>superseded by statute as stated</u> in <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir.

17  2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

18  meritless legal theories or whose factual contentions are clearly baseless."); <u>Franklin</u>, 745 F.2d at

19  1227.

20         Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

21  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

22  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic</u>

23  <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

24  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

25  formulaic recitation of the elements of a cause of action;" it must contain factual allegations

26  sufficient "to raise a right to relief above the speculative level."  <u>Bell Atlantic</u>, 550 U.S. at 555.

27  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

28  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Erickson v.</u>

1   Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

2   quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

3   true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

4   pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

5   (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

6         The Civil Rights Act

7         To prevail on a claim under § 1983, a plaintiff must demonstrate:  (1) the violation of a

8   federal constitutional or statutory right; and (2) that the violation was committed by a person

9   acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Naffe v. Frye,

10  789 F.3d 1030, 1035-36 (9th Cir. 2015).  An individual defendant is not liable on a civil rights

11  claim unless the facts establish the defendant's personal involvement in the constitutional

12  deprivation or a causal connection between the defendant's wrongful conduct and the alleged

13  constitutional deprivation.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v.

14  Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the

15  theory that the official is liable for the unconstitutional conduct of his or her subordinates.

16  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  The requisite causal connection between a

17  supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be

18  established in a number of ways, including by demonstrating that a supervisor's own culpable

19  action or inaction in the training, supervision, or control of his subordinates was a cause of

20  plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

21  Plaintiff's Complaint

22         Plaintiff alleges the following.  First, plaintiff is entitled to early release under Proposition

23  57 but that unidentified officers have issued plaintiff rules violation reports to increase plaintiff's

24  security level and prolong plaintiff's sentence.[1]  Second, he states he was "ejected to the yard

25  with [his] proclaimed enemies," claiming a threat to safety.  (ECF No. 1 at 6.)  Third, defendant

26  Powell, plaintiff's clinician, threatened and disrespected plaintiff, and "began to create a

27  _____

28  [1] Plaintiff checked the box marked "retaliation" (ECF No. 1 at 5), but plaintiff alleges no facts
    supporting a putative retaliation claim.

1    voyeuristic environment when [they] were alone." (ECF No. 1 at 7.)  Fourth, defendant Dr. Kim

2    crushed and floated plaintiff's Buspar and Ephexors [sic][2] prescriptions, which caused plaintiff to

3    vomit all his medications; plaintiff explained that he was unable to finish swallowing eight pills

4    with only two ounces of water, but the nurse made "false claims." (ECF No. 1 at 8.)  Dr. Kim

5    stopped plaintiff's Buspar prescription, causing plaintiff to suffer withdrawals, and then lowered

6    the dose of Ephexors.  Dr. Kim then began a Zoloft prescription which caused plaintiff to suffer

7    panic attacks, seizures, anxiety disorders, depression, and sleepless nights.  About two months

8    later, Dr. Kim again reduced the Ephexors, and a month later discontinued it altogether, again

9    causing withdrawals.  Fifteen days later, during plaintiff's IDTT with his mental health supervisor

10    staff, it was admitted that "a mistake was made." (ECF No. 1 at 8.)  Plaintiff states he was

11    recently removed from the mental health crisis bed, but also states he was not allowed to continue

12    mental health care at the EOP level of care.[3]

13        Plaintiff names as defendants Warden Patrick Covello, CCII K. Costa, Mental Health

14    Supervisor R. Pleshchuk, Counselor Powell, and Psychiatrist Dr. Kim, all employed at Mule

15    Creek State Prison.  As relief, plaintiff seeks transfer to a prison where he can receive mental

16    health care at the EOP level; have Proposition 57 time credits deducted from his sentence, and

17    have prison programming and conduct credits applied to his sentence; have re-adjudicated every

18    rules violation report that violated plaintiff's due process rights; and be provided a Proposition 57

19    parole board hearing.  In addition, plaintiff asks that the facility to which he is transferred provide

20    plaintiff with single cell status, video-camera coverage, and anti-racist staff.

21    ////

22    ////

23

24    [2]  Plaintiff may be referring to Effexor.

25    [3]  CDCR's Mental Health Services Delivery System Program Guide provides four levels of
     mental health care services:  Correctional Clinical Case Management System ("CCCMS");

26    Enhanced Outpatient ("EOP"); Mental Health Crisis Bed ("MHCB") and inpatient hospital care,
     which is offered in two programs, intermediate care facilities ("ICF") and acute psychiatric

27    programs ("APP").  Coleman v. Brown, No. 2:90-cv-0520 KJM DB, 2013 WL 6491529, at *1
     (E.D. Cal. Dec. 10, 2013).

28

1    Discussion

2            Plaintiff's First Claim

3                 Classification

4        Plaintiff alleges that he was illegally incarcerated at a Level III yard, and his due process

5    rights were violated by raising his security level to IV.  (ECF No. 1 at 5.)

6        Inmates do not have a constitutional right to be housed at a particular facility or institution

7    or to be transferred, or not transferred, from one facility or institution to another.  Olim v.

8    Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976);

9    Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).  An inmate does not have a

10   constitutional right to any particular classification.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)

11   ("[P]etitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due

12   process."); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (citations omitted).  Nor

13   do inmates have a right to be housed in a particular part of a prison.  See Grayson v. Rison, 945

14   F.2d 1064, 1067 (9th Cir. 1991) (prisoner had "no 'justifiable expectation' of being anywhere but

15   in administrative detention," and his "placement was left to the discretion of prison officials.").

16   Furthermore, inmates have no Eighth Amendment right to be housed in a manner that avoids

17   confrontation.  Atiyeh v. Capps, 449 U.S. 1312, 1315-16 (1981).  On the basis of such authorities,

18   plaintiff's allegations concerning classification and housing fail to state a Fourteenth Amendment

19   claim upon which relief may be granted, and should not be included in an amended complaint.

20                 Proposition 57

21       Plaintiff appears to allege that the failure to provide him early parole consideration under

22   Proposition 57 violates his rights to due process under the Fourteenth Amendments.[4]

23       On November 8, 2016, the California voters approved the Public Safety and

24   Rehabilitation Act of 2016 "Proposition 57," which took effect the following day.  People v.

25   Marquez, 11 Cal. App. 5th 816, 821 (Cal. App. 2017); Cal. Const., Art. II, § 10(a).  Proposition

26

27   [4]  In his complaint, plaintiff does not challenge a particular rules violation report.  (ECF No. 1,
     passim.)  In Hicks v. Gosai, No. 2:20-cv-2303 KJM JDP (E.D. Cal.), plaintiff is challenging rules
28   violation reports authored by Correctional Officers Gosai and Rammi.  (Id., ECF No. 32 at 4.)

57 makes parole more available for certain felons convicted of nonviolent crimes.  Travers v. People of the State of California, 2018 WL 707546, at *2 (N.D. Cal. Feb. 5, 2018).  Specifically, Proposition 57 adds Article I, section 32 to the California Constitution and provides:

> (a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law:
>
> (1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense.
>
> (A) For purposes of this section only, the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence.
>
> (2) Credit Earning: The Department of Corrections and Rehabilitation shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements.
>
> (b) The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety.

Cal. Const. art. I, § 32. See Cal. Code Regs., tit. 15, § 3490, subd. (c) ["'Violent Felony' is a crime or enhancement as defined in Penal Code section 667.5, subdivision (c)."].)  The addition of § 32 to the California Constitution is the only change made to the adult criminal justice system in California as a result of Proposition 57.

The plain meaning of the wording of Proposition 57 provides for early consideration of a qualifying inmate for parole, not actual parole and release.  Therefore, such consideration falls outside of the "core of habeas corpus," and must be pursued (if at all) in a civil rights action under 42 U.S.C. § 1983 rather than in a habeas action.  Nettles v. Grounds, 830 F.3d 922, 927-28 (9th Cir. 2016), cert. denied, 137 S. Ct. 645 (2017); See Solano v. Calif. Substance Abuse Treat. Fac., 2017 WL 5640920, at *1-2 (C.D. Cal. 2017) (habeas claims regarding Prop. 57 should be brought in § 1983 action), rep. and rec. adopted, 2017 WL 5641027 (C.D. Cal. 2017); McCarary v. Kernan, 2017 WL 4539992, at *2 (E.D. Cal. 2017) (challenge to applicability of Prop. 57 properly brought in civil rights action).

1    The denial of parole consideration under Proposition 57 asserts a violation or

2  misinterpretation of state law and is not cognizable under § 1983.  See Bisel v. Kernan, 2018 WL

3  11294697, at *8 (E.D. Cal. Aug. 17, 2018) (cases cited therein).  However, assuming plaintiff

4  could state a cognizable claim for violation of his constitutional rights based on defendants'

5  failure to grant him parole consideration under Proposition 57, plaintiff has not demonstrated that

6  he qualifies for parole consideration under Proposition 57.  See Bisel, 2018 WL 11294697 at *10

7  ("Thus, if properly linked to named defendants, factual allegations showing that one was

8  convicted of non-violent felonies, that the full term for the primary offense(s) (exclusive of

9  enhancement, consecutive sentences, or alternative sentencing) have run, and that he has not

10  received parole consideration as dictated by Proposition 57 despite repeated requests may state a

11  cognizable due process claim.")

12    Here, plaintiff states that he sustained a nonviolent felony offense, but he fails to identify

13  his conviction.  He also fails to address whether he has completed the full term for his primary

14  offense, and while he seeks application of credits, he fails to provide a basis upon which to find

15  that any good time he has earned applies to his eligibility for parole consideration after

16  completing the full term for his primary offense under Proposition 57.

17    In addition, plaintiff fails to set forth facts demonstrating that a named defendant was

18  personally involved in any act or omission which resulted in excluding or delaying plaintiff from

19  parole consideration under Proposition 57.  As set forth above, 42 U.S.C. § 1983 requires that

20  there be an actual connection or link between the actions of the defendants and the deprivation

21  alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S.

22  658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person

23  'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983,

24  if he does an affirmative act, participates in another's affirmative acts or omits to perform an act

25  which he is legally required to do that causes the deprivation of which complaint is made."

26  Johnson v. Duffy, 588 F.2d at 743.  To state a claim for relief against the named defendant,

27  plaintiff must link each of them to an affirmative act or omission that demonstrates a violation of

28  plaintiff's federal rights.  See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).

Therefore, plaintiff's Proposition 57 claim must be dismissed.  If plaintiff files an amended complaint as to such claim, his allegations must demonstrate that he has completed the full term for his primary offenses and is eligible for parole consideration under Proposition 57.[5]

Plaintiff's Second Claim

Plaintiff claims that his safety was threatened when he was ejected to a yard with "proclaimed enemies."

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.  DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-200 (1989).  "[An] affirmative duty to protect arises . . . from the limitation which [the State] has imposed on his freedom to act on his own behalf."  Id. at 200.

The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner.  See Farmer, 511 U.S. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  Specifically, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  Farmer, 511 U.S. at 833.

To state a cognizable Eighth Amendment claim on a failure to protect theory, a prisoner must reasonably allege that the named defendant knew of but disregarded an excessive risk to plaintiff's health or safety.  Farmer, 511 U.S. at 837.  There must be evidence which shows that a defendant acted with a "sufficiently culpable state of mind."  Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

---

[5]  Moreover, any putative due process claim would arise under the Fourteenth Amendment.  The Fifth Amendment's due process clause only applies to the federal government.  Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States: 'nor shall any State deprive any person of life, liberty, or property, without due process of law.' " (quoting U.S. CONST. amend. XIV).  Because plaintiff is not proceeding against federal actors, he is unable to state a cognizable claim for violation of his rights under the Fifth Amendment.  Rather, plaintiff's allegations are properly analyzed under the Fourteenth Amendment.

1  Farmer, 511 U.S. at 837.  "[I]t is enough that the official acted or failed to act despite his
2  knowledge of a substantial risk of serious harm."  Id. at 842 (citations omitted).

3       Moreover, allegations that prison officials called an inmate a "snitch" in the presence of
4  other prisoners may violate the inmate's right to be protected from violence while in custody.  See
5  Valandingham v. Bojorquez, 866 F.2d 1135, 1137-39 (9th Cir. 1989) (an inmate labeled a snitch
6  by prison officials for filing grievances may state a claim under § 1983).  In such cases, a plaintiff
7  must "allege that he has been assaulted or threatened with an assault by other prisoners."
8  Williams v. Wood, 223 F. App'x 670, 671 (9th Cir. 2007).  However, "speculative and
9  generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial
10  risk of serious harm."  Id.

11       Here, plaintiff fails to provide enough information to state a cognizable failure to protect
12  claim.  Instead, plaintiff conflates his Proposition 57 claim with his threat to safety claim, and
13  includes at least one incident not at issue herein.[6]  Plaintiff fails to clearly identify who "ejected"
14  plaintiff to the yard, whether that person was aware of such "proclaimed enemies," and when
15  such ejection took place.  With regard to defendant Costa, who held plaintiff's classification
16  hearing, plaintiff alleges no facts demonstrating that Costa was aware that nonparty Officer Gosai
17  had spread rumors that plaintiff had "snitched" and "said black inmates were making weapons."
18  (ECF No. 1 at 6.)  Rather, at the hearing plaintiff "expressed fear for [his] life and unlawful
19  security level incarceration," as well as his request to be reassigned to his electrical position.  (Id.)
20  Absent facts not alleged here, plaintiff's claim that Costa told plaintiff that Costa was transferring
21  plaintiff to A yard only until another yard became available does not demonstrate Costa acted
22  with a culpable state of mind.

23       In addition, plaintiff claims he is on a yard with the majority of inmates serving life
24  sentences while plaintiff is the only one serving a non-violent crime.  He subsequently claims he
25  has "many enemies" at MCSP.  (ECF No. 1 at 8.)  But plaintiff fails to identify such enemies, or
26

27    [6]  For example, plaintiff claims Officer Russell physically assaulted plaintiff on July 15, 2021.
28  (ECF No. 1 at 6.)  Based on such incident, plaintiff is pursuing First and Eighth Amendment
claims against defendant Russell in Hicks v. Russell, No. 2:22-cv-0095 JDP (E.D. Cal.).

1  to provide specific facts demonstrating a substantial risk of harm existed; thus, plaintiff's

2  generalized fear is insufficient.  Plaintiff must allege specific facts demonstrating that the named

3  defendant knew of and disregarded threats or actual harassment by other inmates based on

4  plaintiff having been labeled a "snitch."  See Farmer, 511 U.S. at 834.

5          Plaintiff is granted leave to amend to state specific facts to support a threat to safety claim.

6          Claim Three:  Denial of Mental Health Care

7          Initially, the undersigned observes that plaintiff's claims that defendant Powell threatened

8  to remove plaintiff from EOP in 90 days and disrespected plaintiff, standing alone, are

9  insufficient to demonstrate an Eighth Amendment violation.  Allegations of mere threats are not

10  cognizable.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute

11  constitutional wrong, nor do allegations that naked threat was for purpose of denying access to

12  courts compel contrary result).  Similarly, allegations of harassment, embarrassment, and

13  defamation are not cognizable under section 1983.  Rutledge v. Arizona Bd. of Regents, 660 F.2d

14  1345, 1353 (9th Cir. 1981), aff'd sub nom. Kush v. Rutledge, 460 U.S. 719 (1983); see also

15  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1982) (allegations of harassment with regards

16  to medical problems not cognizable).

17          On the other hand, the treatment a prisoner receives in prison and the conditions under

18  which he is confined are subject to scrutiny under the Eighth Amendment.  See Helling v.

19  McKinney, 509 U.S. 25, 31 (1993).  A mentally ill prisoner may establish unconstitutional

20  treatment on behalf of prison officials by showing that officials have been deliberately indifferent

21  to his serious medical needs.  See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994);

22  see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements

23  analyzed as part of general health care requirements).  A serious medical need exists if the failure

24  to treat a prisoner's condition could result in further significant injury or the unnecessary and

25  wanton infliction of pain.  Doty, 37 F.3d at 546; see, e.g., Conn v. City of Reno, 591 F.3d 1081,

26  1094 (9th Cir. 2010) (a heightened suicide risk or an attempted suicide is a serious medical need;

27  reversing grant of summary judgment to transporting police officers where plaintiffs presented

28  sufficient evidence for a jury to find that the decedent's pre-suicidal actions objectively evidenced

1  a serious medical need), reinstated as modified by 658 F.3d 897 (9th Cir. 2011); Capps v. Atiyeh,

2  559 F. Supp. 894, 916 (D. Ore. 1983) (inmate suffers Eighth Amendment pain whenever he must

3  endure untreated serious mental illness for any appreciable length of time).

4        Under the Eighth Amendment, deliberate indifference requires a showing that prison

5  officials possess a sufficiently culpable state of mind.  See Farmer, 511 U.S. at 834.  Specifically,

6  it must be shown both that each defendant was subjectively aware of the serious medical need and

7  failed to adequately respond to that need.  Conn, 591 F.3d at 1096.  In other words, a prison

8  official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious

9  harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer, 511 U.S. at

10  837.  The prison official must not only "be aware of facts from which the inference could be

11  drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If

12  a prison official should have been aware of the risk, but was not, then the official has not violated

13  the Eighth Amendment, no matter how severe the risk.  Additionally, the officials' actions must

14  be the cause of the injury suffered as a result of their deliberate indifference.  Conn, 591 F.3d at

15  1098.  An isolated failure to respond to a non-serious medical need cannot, by itself, establish an

16  unconstitutional health care system.  See Doty, 37 F.3d at 547.

17        "A difference of opinion between a prisoner-patient and prison medical authorities

18  regarding treatment does not give rise to a § 1983 claim."  Franklin, 662 F.2d at 1344.  Similarly,

19  a showing of nothing more than a difference of medical opinion as to the need to pursue one

20  course of treatment over another is insufficient, as a matter of law, to establish deliberate

21  indifference, Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d

22  240, 242 (9th Cir. 1989).  In order to prevail on a claim involving choices between alternative

23  courses of treatment, a plaintiff must show that the course of treatment the doctors chose was

24  medically unacceptable under the circumstances and that he or she chose this course in conscious

25  disregard of an excessive risk to plaintiff's health.  Toguchi, 391 F.3d at 1058; Jackson v.

26  McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837).

27        Plaintiff's allegations fail to demonstrate defendant Powell was deliberately indifferent to

28  plaintiff's mental health needs.  After plaintiff was on A yard for almost two months, defendant

11

1   Powell told plaintiff that defendant Powell would only allow plaintiff 90 days before removing

2   him from the EOP.  (ECF No. 1 at 7.)  Plaintiff appealed the threat, and claims defendant Dr.

3   Pleshchuk met with plaintiff and asked him why he wanted to be in the program.  Plaintiff

4   responded that he needed help with anxieties and depression.  Plaintiff then states he was

5   "abruptly removed from the program" even though he had not been on the A yard for five

6   months.  (ECF No. 1 at 7.)  But defendant Powell informed plaintiff he was only put in the

7   program "because of the early release credits."  (Id.)  Plaintiff does not specifically identify who

8   removed him from the program, referencing "they."  (Id.)  Such allegations fail to show either

9   defendant acted or failed to act with a culpable state of mind.

10          Again, plaintiff fails to provide sufficient facts to determine whether he can state a

11   cognizable Eighth Amendment claim as to defendants Powell or Dr. Pleshchuk.  But in an

12   abundance of caution, plaintiff is granted leave to amend.

13          Claim Four:  Medical Care

14          To state a viable claim of deliberate indifference to a serious medical need, a plaintiff

15   must show that (1) a serious medical need exists, and (2) defendant's response was deliberately

16   indifferent.  Serious medical need can be shown by demonstrating that a failure to treat a prisoner

17   could result in significant injury or worsening pain.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

18   2006).  A deliberately indifferent response can be shown by a purposeful act or failure to respond

19   to a prisoner's pain or possible medical need coupled with harm caused by that indifference.  Id.

20   "A heightened suicide risk or an attempted suicide is a serious medical need."  Conn, 591 F.3d at

21   1095.

22          Plaintiff's allegations as to Dr. Kim are not clear.  Plaintiff obliquely claims that the pill

23   nurse made "false claims."  Dr. Kim crushed and floated plaintiff's psychiatric medications,

24   which suggests plaintiff may have been accused of diverting medications.  If that is the case, Dr.

25   Kim was not acting with a culpable state of mind by tapering and discontinuing such medications;

26   indeed, medical policy may require it.  But plaintiff also references a failed overdose attempt on

27   his part.  It is not clear whether plaintiff attempted to overdose prior to Dr. Kim adjusting

28   plaintiff's medications, or after.

It is clear, however, that plaintiff disagreed with Dr. Kim's methods, and plaintiff alleges that the IDTT committee "admitted a mistake was made." (ECF No. 1 at 8.) However, such allegations fail to demonstrate deliberate indifference on the part of Dr. Kim.

The Supreme Court established a very demanding standard for deliberate indifference; and negligence is insufficient. Farmer, 511 U.S. at 835. It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi, 391 F.3d at 1057 (internal citation omitted). A difference of opinion between an inmate and prison medical personnel, or between medical professionals, regarding appropriate medical diagnosis and treatment is also not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d at 242; Toguchi, 391 F.3d at 1058. Moreover, even medical malpractice or "gross negligence" does not by itself establish deliberate indifference to serious medical needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a patient is not entitled to request a prescription for a specific medication, and a doctor's refusal to comply with such a request does not amount to an Eighth Amendment violation. See Arellano v. Sedighi, 2020 WL 5877832, at *18 (S.D. Cal. Oct. 1, 2020), adopting report and recommendation, 2021 WL 7711170 (S.D. Cal. May 7, 2021); Tucker v. Daszko, 2017 WL 4340090, at *3 (E.D. Cal. Sep. 29, 2017) (citing cases). Simply showing that a course of treatment proves to be ineffective, without demonstrating that the medical professional's conduct was medically unacceptable under the circumstances and chosen in conscious disregard to plaintiff's health, also does not establish a claim for deliberate indifference. Nicholson v. Finander, 2014 WL 1407828, at *9 (C.D. Cal. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976); Toguchi, 391 F.3d at 1058).

For all of the above reasons, plaintiff's fourth claim is dismissed. Given plaintiff's vague allegations, it is unclear whether plaintiff can amend his complaint to state a cognizable Eighth Amendment claim against defendant Dr. Kim. However, in an abundance of caution, plaintiff is granted leave to amend.

13

1       <u>Misjoinder</u>

2           Finally, plaintiff's claims are not properly raised in the same action.  Rule 21 of the

3   Federal Rules of Civil Procedure provides:

4

> Misjoinder of parties is not a ground for dismissing an action. On
> motion or on its own, the court may at any time, on just terms, add

5

> or drop a party. The court may also sever any claim against a party.

6   Fed. R. Civ. P. 21.  Rule 20(a) provides that all persons may be joined in one action as defendants

7   if "any right to relief is asserted against them jointly, severally, or in the alternative with respect

8   to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and

9   "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P.

10  20(a)(2).  <u>See also</u> <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against

11  unrelated defendants belong in different suits").  If unrelated claims are improperly joined, the

12  court may dismiss them without prejudice.  Fed. R. Civ. P. 21; 7 Alan Wright, Arthur Miller &

13  Mary Kay Kane, Richard Marcus, Federal Practice and Procedure § 1684 (3d ed. 2012); <u>Michaels</u>

14  <u>Building Co. v. Ameritrust Co.</u>, 848 F.2d 674, 682 (6th Cir. 1988) (affirming dismissing under

15  Rule 21 of certain defendants where claims against those defendants did not arise out of the same

16  transaction or occurrences, as required by Rule 20(a)).  Here, plaintiff's claims arose from

17  different incidents involving different defendants, and therefore are not properly joined in one

18  action.

19        Where parties have been misjoined, the court may drop a party or sever the claims against

20  that party.  Fed. R. Civ. P. 21.  "[D]istrict courts who dismiss rather than sever must conduct a

21  prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by statutes

22  of limitations.'"  <u>Rush v. Sport Chalet, Inc.</u>, 779 F.3d 973, 975 (9th Cir. 2015) (quoting <u>DirecTV,</u>

23  <u>Inc. v. Leto</u>, 467 F.3d 842, 846-47 (3d Cir. 2006)).  Here, because the unrelated claims are based

24  on relatively recent incidents, July of 2021, and plaintiff has failed to allege facts to state a

25  cognizable civil rights claim, plaintiff will not be prejudiced by this dismissal with leave to

26  amend.  Because plaintiff's complaint is dismissed with leave to amend, plaintiff must decide

27  which claim to pursue in this action and pursue any remaining claims in separate, timely actions.

28  ////

14

1    See also George, 507 F.3d at 607 ("Unrelated claims against unrelated defendants belong in

2    different suits").

3          Leave to Amend

4          The court finds the allegations in plaintiff's complaint so vague and conclusory that it is

5    unable to determine whether the current action is frivolous or fails to state a claim for relief.  The

6    court determines that the complaint does not contain a short and plain statement as required by

7    Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a complaint

8    must give fair notice and state the elements of the claim plainly and succinctly.  Jones v. Cmty.

9    Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at least some

10   degree of particularity overt acts which defendants engaged in that support plaintiff's claim.  Id.

11   Because plaintiff failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the complaint

12   must be dismissed.  The court, however, grants leave to file an amended complaint.  See Rosati v.

13   Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se

14   complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is

15   absolutely clear that the deficiencies of the complaint could not be cured by amendment.'")

16   (quoting Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012)).

17         If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

18   about which he complains resulted in a deprivation of plaintiff's constitutional rights.  See, e.g.,

19   West, 487 U.S. at 48.  Also, the complaint must allege in specific terms how each named

20   defendant is involved.  Rizzo, 423 U.S. at 371.  There can be no liability under 42 U.S.C. § 1983

21   unless there is some affirmative link or connection between a defendant's actions and the claimed

22   deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

23   Furthermore, vague and conclusory allegations of official participation in civil rights violations

24   are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

25         In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

26   make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

27   complaint be complete in itself without reference to any prior pleading.  This requirement exists

28   because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez

15

1  v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint

2  supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation

3  omitted)).  Once plaintiff files an amended complaint, the original pleading no longer serves any

4  function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim

5  and the involvement of each defendant must be sufficiently alleged.

6       In accordance with the above, IT IS HEREBY ORDERED that:

7       1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

8       2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

9  is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

10  § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

11  Director of the California Department of Corrections and Rehabilitation filed concurrently

12  herewith.

13       3.  Plaintiff's complaint is dismissed.

14       4.  Within thirty days from the date of this order, plaintiff shall complete the attached

15  Notice of Amendment and submit the following documents to the court:

16            a.  The completed Notice of Amendment; and

17            b.  An original of the Amended Complaint.

18  Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the

19  Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must

20  also bear the docket number assigned to this case and must be labeled "Amended Complaint."

21       Failure to file an amended complaint in accordance with this order may result in the

22  dismissal of this action.

23  Dated:  October 6, 2022

24

25                                         _____
                                           KENDALL J. NEWMAN
                                           UNITED STATES MAGISTRATE JUDGE
26  /hick0903.14n

27

28

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DARYL ANTHONY HICKS,                  No.  2:22-cv-0903 KJN P

              Plaintiff,
12
         v.                                NOTICE OF AMENDMENT
13
     PATRICK COVELLO, et al.,
14
              Defendants.
15

16        Plaintiff hereby submits the following document in compliance with the court's order

17   filed_____.

18                          _____        Amended Complaint
     DATED:
19

20                                                 _____
21                                                 Plaintiff

22

23

24

25

26

27

28
                                          17